UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS J. PAYNE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-0497-B |
| | § | |
| ADAM PARK, individually and in his | § | |
| official capacity as Lieutenant of TXDPS– | § | |
| Private Security Bureau, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Adam Park's Motion for Summary Judgment (doc. 38), filed October 18, 2011. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

## I.

## BACKGROUND

In Texas, securities services provided by private individuals and entities are governed by the Private Securities Act. *See generally*, TEX. OCC. CODE ANN. § 1702.004 (West 2004). Under the Private Securities Act ("PSA"), the Private Security Bureau of the Department of Public Safety (the "Bureau") is given authority to administer the statute. TEX. OCC. CODE ANN. § 1702.005. This authority includes the ability to "summarily suspend the person's license, certificate of registration, endorsement, or security officer commission" in the event that an officer is charged with or convicted of an offense that would make the person ineligible for a license. TEX. OCC. CODE ANN.

- 1 -

§ 1702.364(a). If the Bureau elects to suspend an individual, the PSA provides procedural safeguards to the officer, including notice of the suspension and a right to a hearing. TEX. OCC. CODE ANN. § 1702.364(b)-(d). Therefore, Chapter 1702 recognizes the authority of the Bureau to suspend a license of an officer, even if that officer has not yet been convicted of any offense. This authority is at issue in the present case.

Plaintiff Marcus J. Payne, who is proceeding *pro se*, was employed by Absolute Security Services, Inc. ("Absolute Security"), a registrant of the Bureau, as a licensed security officer. On January 17, 2010, Payne was arrested in Rockwell County, Texas, and charged with theft. Pl's Fourth Am. Compl. ("Compl.") ¶ 3. As a result of this charge, on May 26, 2010, the Bureau, acting through Defendant Adam Park, summarily suspended Payne's license. *Id.* Consequently, Absolute Security informed Payne that he should not return to work until his license was reinstated. *Id.* ¶ 4. On July 2, 2010, Payne requested a stay of his summary suspension and further requested a hearing to be held before the Bureau. *Id.* ¶ 5. The request for a stay was denied and a hearing was not scheduled until, at the earliest, July 2010.[1] *Id.* ¶ 6; Def's App. to Mot. for Summ. J. ("Def's App.") 2. Plaintiff was then fired by Absolute Security on June 8, 2010. Compl. ¶ 7.

---

[1] Payne, in his Complaint, claims that he was denied a hearing he was entitled to. Compl. ¶ 6. Under Chapter 1702, an officer whose license is summarily suspended has the right to a preliminary hearing. TEX. OCC. CODE ANN. § 1702.364(b), (d). Park denies that Payne was refused a hearing and claims that one was scheduled for July 2010. Def's Answer ¶ 6. Furthermore, Park produced an affidavit that claims the following, "It is my understanding that Mr. Payne . . . requested a hearing on the summary suspension pursuant to § 1702.364(d), Occupations Code, and was advised the hearing would be scheduled in July 2010." Def's App. 2. To support a motion for summary judgment, an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ." FED. R. CIV. P. 56(e); *see Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007). Therefore, there remains a question as to whether this hearing was denied or scheduled. *See supra* Part III.

On June 29, 2010, the theft charges against Payne were dismissed.[2] Upon being notified of this fact, the Bureau advised Payne on July 3, 2010, that it was rescinding the suspension of his license in accordance with the Private Securities Act. *Id.* ¶ 10. However, by this time, Payne had already been terminated by Absolute Security. *Id.*

Payne originally filed this suit in state court on January 31, 2011. Defendant thereafter removed to this Court on the basis of federal question jurisdiction. Notice of Removal 2. Payne filed a Fourth Amended Complaint on May 12, 2011, and Park filed a Corrected Answer ("Answer") on May 31, 2011. In his Complaint, Park makes three separate claims: first, under Count 1, that the suspension of his license without an adjudication violated the Eighth and Fourteenth Amendments of the United States Constitution; second, under Count 2, that he was not given notice of the "adverse decision" as required by statute, which is a violation of procedural due process; and third, under Count 3, that in suspending his license, Defendant committed the tort of intentional infliction of emotional distress. Compl. 13-21.Defendant denies all material allegations and filed a Motion for Summary Judgment on October 18, 2011. Payne did not file a Response in time, but filed a Motion for Leave to File a Response, which the Court granted on December 1, 2011. Park did not file a reply brief. Given that the Motion is now ripe, the Court will consider legal issues raised below.

## II.

## LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine

---

[2] Payne states that he was found not guilty at trial, Compl. ¶ 8, while Park states that the case was dismissed without prejudice due to insufficient evidence. Answer ¶ 8. The Court need not resolve this dispute, but merely notes that the record is not clear as to the final disposition of this theft charges.

dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in

the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075. Nevertheless, the Court must construe the complaint of a *pro se* plaintiff liberally. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986). That is, unless the complaint is clearly fanciful or frivolous, "it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of the same." *Id.*

## III.

## ANALYSIS

Payne's Complaint details three separate causes of action; his constitutional claims are actionable pursuant to 42 U.S.C. § 1983, while his tort claim is brought under Texas state law. Generally, Payne charges that the suspension of his license violated his constitutional rights, and that Park acted recklessly and intentionally. Payne's claims suggest both that the PSA is, on its fact, unconstitutional, and that Park violated his rights by failing to adhere to the statute. Park, in both his Answer and Motion for Summary Judgment, claims that the suspension of his license complied with Texas state law and was consistent with the United States Constitution. The Court will address each of the constitutional claims below.

A.       *Count 1: Equal Protection Claim*

Payne first argues that Payne violated the Equal Protection Clause of the Fourteenth

Amendment when it suspended his license. However, beyond stating that the suspension violated the Equal Protection Clause, Payne offers no explanation or legal argument as to why this is the case. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216(1982)). Payne has neither alleged nor offered any evidence that he was treated dissimilarly from any other person. Additionally, Payne has not alleged that he is a member of a suspect class, or that the PSA's provisions fail to support a legitimate state interest. *See Romer v. Evans*, 517 U.S. 620, 631 ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."). Given that Payne has failed to support his claim, and given that his Complaint fails to state in what way his suspension violates the Equal Protection Clause, the Court finds that it does not have merit.

B.     *Count 1: Eighth Amendment Claim*

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Payne claims that the Eighth Amendment "prohibits punishment that is not commensurate with the offense," but such a claim is overly broad because the rights guaranteed by the Fifth Amendment do not apply to all disciplinary actions. Rather, as the Fifth Circuit has noted, "the protections [guaranteed by] the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners . . . ." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Payne fails to properly enumerate how the suspension of his license might be cognizable under the Eighth Amendment, and there is

- 6 -

no evidence to suggest that it was penal. Thus, Payne has styled his due process claims as violations of the Eighth Amendment. Accordingly, the Court finds that Park did not commit an Eighth Amendment violation when it suspended his license.

C.      *Count 2: Due Process Claim*

The Supreme Court has held that procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Consistent with this principle, the Court has held that a hearing is required before the State deprives a person of a liberty or property interest. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (citation omitted); *Memphis Light, Gas, and Water Div. v. Craft*, 436 U.S. 1, 16 (1978) (finding that "due process requires the provision of an opportunity for the presentation to a designated employee of a customer's complaint that he is being overcharged or charged services not rendered"); *Goss v. Lopez*, 419 U.S. 565, 579 (1975) ("At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.").

However, in instances where quick action by the State is necessary, or where providing a pre-deprivation process is impractical, a post-deprivation hearing may be constitutionally sufficient. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990); *see also Memphis Light*, 436 U.S. at 19 (noting that "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the

risk," the government may act without a pre-deprivation hearing). Therefore, the fact that the Bureau may summarily suspend a license without a pre-deprivation hearing does not make the statute, on its face, violative of due process. Indeed, Payne does not seem to make such an expansive claim in his Complaint.

Rather, Payne makes a far narrower claim that Park acted in bad faith and failed to properly notify him of his adverse decision. Payne also notes, in his summary of the facts, that the Bureau refused to hold a hearing on the issue of his suspension. The issue of whether Payne was granted the opportunity for a hearing is essential to the question of whether he received due process. *See Mathews*, 424 U.S. at 332 ("This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."). Furthermore, given that the PSA grants prisoners the statutory right to challenge a summary suspension pursuant to § 1702.364(d), a denial of such a procedure, as guaranteed by statute, would *a fortiori* be a denial of his right to due process.[3] Defendant, in his Motion for Summary Judgment, provides only an affidavit, signed by Mr. Park, that claims, "It is my understanding that Mr. Payne requested a hearing . . . and was advised the hearing would be scheduled for July 2010." This portion of the affidavit is not based on personal knowledge, and therefore cannot support Defendant's Motion. *See supra*, n. 1. Therefore, the Court cannot determine, based on the evidence before it, whether the State offered or denied a hearing.

---

[3] Defendant generally asserts the affirmative defense of qualified immunity. Qualified immunity protects government actors from liability insofar as the conduct in question "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a government official to be held liable, then, the unlawfulness of his or her actions must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 614-15 (1999). Defendant's Motion fails to address whether the refusal to grant a post-deprivation hearing to Payne would violate clearly established law. Given that Payne's claim, as alleged, would violate the PSA, as well as Supreme Court precedent, *see Mathews*, 424 U.S. at 332, the Court finds that Park is not entitled to qualified immunity at this time.

Accordingly, the Motion, as it pertains to Count 2, is **DENIED**.

D.     *Count 3: Intentional Infliction of Emotional Distress*

Payne finally claims that the allegations establish that Park committed the tort of intentional infliction of emotional distress. To state a prima facie claim for intentional infliction of emotional distress under Texas law, a plaintiff must show "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Carlton v. Fearneyhough*, No. 07-10676, 2008 WL 686595, at *4 (5th Cir. 2008) (quoting *Hoffman–LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). Intentional infliction of emotional distress is a "gap-filler" tort that is available only "in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* (citation omitted). As a result, courts interpreting Texas law have refused to consider this tort where other remedies remain available. *See Day v. Rogers*, 260 Fed. App'x 692, 696 (5th Cir. 2007) (dismissing tort claim because plaintiff "had other constitutional and state causes of action leaving no gap to be filled"). Payne has failed to offer any explanation as to how his tort claim differs from his separate constitutional claims, and therefore, there is no evidence to indicate that the other remedies available are insufficient. Accordingly, Count 3 is **DISMISSED**.

## IV.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. The Court hereby **GRANTS** the Motion regarding Counts 1 and 3 of Payne's Complaint. However, Defendant has failed to satisfy his burden that there is no genuine

- 9 -

issue of material fact as to whether Payne was denied procedural due process, as guaranteed by the Fourteenth Amendment. Accordingly, the Motion with respect to Count 2 is **DENIED**.

     **SO ORDERED.**

     **SIGNED February 2, 2012**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE