UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS J. PAYNE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-0497-B |
| | § | |
| ADAM PARK, individually and in his | § | |
| official capacity as Lieutenant of | § | |
| TXDPS–Private Security Bureau, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Adam Park's Second Motion for Summary Judgment (doc. 57), filed March 8, 2012. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

I.

BACKGROUND

In Texas, securities services provided by private individuals and entities are governed by the Private Securities Act. *See generally*, TEX. OCC. CODE ANN. § 1702.004 (West 2004). Under the Private Securities Act ("PSA"), the Private Security Bureau of the Department of Public Safety (the "Bureau") is given authority to administer the statute. TEX. OCC. CODE ANN. § 1702.005. This authority includes the ability to "summarily suspend the person's license, certificate of registration, endorsement, or security officer commission" in the event that an officer is charged with or convicted of an offense that would make the person ineligible for a license. TEX. OCC. CODE ANN. §

1702.364(a). If the Bureau elects to suspend an individual, the PSA provides procedural safeguards to the officer, including notice of the suspension and a right to a hearing. TEX. OCC. CODE ANN. § 1702.364(b)-(d). Therefore, Chapter 1702 recognizes the authority of the Bureau to suspend a license of an officer, even if that officer has not yet been convicted of any offense. The Bureau's hearing procedures are at issue in the present case.

Plaintiff Marcus J. Payne ("Payne"), who is proceeding *pro se*, was employed by Absolute Security Services, Inc. ("Absolute Security"), a registrant of the Bureau, as a licensed security officer. On January 17, 2010, Payne was arrested in Rockwall County, Texas, and charged with theft. Pl.'s Fourth Am. Compl. ("Compl.") ¶ 3. As a result of this charge, on May 26, 2010, the Bureau, acting through Defendant Adam Park ("Defendant" or "Park"), summarily suspended Payne's license. *Id.* Consequently, Absolute Security informed Payne that he should not return to work until his license was reinstated. *Id.* ¶ 4. On June 2, 2010, Payne requested a stay of his summary suspension and further requested a hearing to be held before the Bureau. *Id.* ¶ 5. The request for a stay was denied. *Id.* ¶ 6. Absolute Security subsequently fired Payne on June 8, 2010. Compl. ¶ 7.

On June 29, 2010, the theft charges against Payne were dismissed.[1] Upon being notified of this fact, the Bureau advised Payne on July 3, 2010, that it was rescinding the suspension of his license in accordance with the Private Securities Act. *Id.* ¶ 10. However, by this time, Payne had already been terminated by Absolute Security. *Id.* At issue in Park's Second Motion for Summary Judgment ("Second Motion") is whether Payne was given the opportunity to have some form of hearing to address the suspension of his license.

---

[1] Payne states that he was found not guilty at trial, Compl. ¶ 8, while Park states that the case was dismissed without prejudice due to insufficient evidence. Answer ¶ 8. The Court need not resolve this dispute, but merely notes that the record is not clear as to the final disposition of this theft charges.

Payne originally filed this suit in state court on January 31, 2011. Park thereafter removed the case to this Court on the basis of federal question jurisdiction. Notice of Removal 2. Payne filed a Fourth Amended Complaint on May 12, 2011, and Park filed a Corrected Answer ("Answer") on May 31, 2011. In his Complaint, Park made three separate claims. First, under Count 1, Payne alleges that the suspension of his license without an adjudication violated the Eighth and Fourteenth Amendments of the United States Constitution. Compl. ¶¶ 13–16. Under Count 2, Payne alleges that he was not given notice of the "adverse decision" as required by statute, which is a violation of procedural due process. *Id.* ¶¶ 17–19. Payne also alleges in his facts that he was denied a hearing he was entitled to, which the Court construes as a part of his procedural due process claim. *Id.* ¶ 6. Lastly, under Count 3, Payne alleges that in suspending his license, Park committed the tort of intentional infliction of emotional distress. *Id.* ¶¶ 20–21.

Park filed his First Motion for Summary Judgment ("First Motion") (doc. 38) on October 18, 2011. This Court granted in part and denied in part Park's First Motion in a Memorandum Opinion and Order (doc. 55). Judgment was granted for Park with respect to Counts 1 and 3. However, the Court denied the First Motion with respect to Count 2, Payne's due process claim, which Payne premised on allegations that Park refused to afford him a hearing on the issue of his suspension. The only evidence Park produced with respect to the First Motion was his own affidavit stating, "It is my understanding that Mr. Payne . . . requested a hearing on the summary suspension pursuant to § 1702.364(d), Occupations Code, and was advised the hearing would be scheduled in July." Order at 2, n.1, ECF No. 55; Def.'s App. to First Mot. for Summ. J. ("Def.'s First App.") 2. Because this affidavit was not based on personal knowledge, the Court held that the statements in the affidavit

could not support Park's First Motion. Accordingly, the Court found there was a fact issue as to whether the State offered or denied Payne a hearing.

On March 8, 2012, Park filed a Second Motion for Summary Judgment ("Second Motion"). To support the Second Motion, Park proffered additional evidence. Most importantly, Park submitted an affidavit from Mandy Tennill ("Tennill"), an administrative assistant responsible for scheduling the Bureau's preliminary hearings. Def.'s App. To Second Mot. for Summ. J. ("Def's Second App.") 1–2. Tennill stated that on June 14, 2010, she learned Payne's request for a stay was denied. *Id.* That day, she telephoned Payne and left a message informing him that the June hearing docket was full but a hearing would be scheduled for July when that month's docket was set. *Id.* at 2.

Payne filed a response in opposition to Park's Second Motion. Payne objects to Tennill's statement, arguing it is not competent summary judgment evidence because it is conclusory hearsay. Pl.'s Resp. 3–4. Payne further argues that given the consequences of being deprived his license, Park violated due process by depriving him of an opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* at 4–6. Payne's argument appears to be premised on the timing of the hearing, not the manner in which it was to be conducted. Even if the hearing was offered to Payne at an appropriate time, Payne argues that Tennill's statement fails to satisfy the legal threshold required to render summary judgment for Park. *Id.* at 4. Given that the Motion is now ripe, the Court will consider legal issues raised below.

## II.

## LEGAL STANDARDS

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325).

Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075. Nevertheless, the Court must construe the complaint of a *pro se* plaintiff liberally. *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986). That is, unless the complaint is clearly fanciful or frivolous, "it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of the same." *Id.*

## III.

## ANALYSIS

The Court begins its analysis by addressing the Payne's evidentiary objections. Then, the Court will consider whether the timing of Payne's hearing, had it been held, would run afoul of Payne's due process rights. Finally, the Court will address the sufficiency of the Park's evidence on summary judgment.

A.     *Evidentiary Objections*

Payne objects on hearsay grounds to the admission of Tennill's statement that she left Payne a message informing him that he would be scheduled for a hearing in July. Hearsay is defined as a

statement not made in testimony during the current trial that is "offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c)(1)–(2). The substance of Tennill's message, if offered to prove that a hearing would be scheduled for July, is hearsay. However, the remainder of Tennill's affidavit, including information regarding the Bureau's procedure for scheduling hearings is not hearsay. Tennill explains that the Bureau was capable of scheduling only twenty preliminary hearings each month, and that she forwarded records regarding Payne's request to a technician to include in Payne's file. Tennill also indicates that Payne's registration was reinstated before the Bureau was able to schedule the hearing, which would have occurred sometime in July.

Payne fails to challenge the validity of these statements, and contends only that they are inadmissible because they are "essentially, specious, conclusory and hearsay." Pl.'s Resp. 3. "FED. R. EVID. 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken." *Brockie v. Ameripath, Inc.*, No. 3:06–CV–0185–G, 2007 WL 1187984, at *6 (N.D. Tex. Apr. 23, 2007) (Fish, J.) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)), *aff'd*, 273 F. App'x. 375 (5th Cir. 2008). Because Payne asserts that the evidence is inadmissible without specifically articulating the grounds for their objections, his objections are hereby **DENIED**.

B.      *The Timing of the Hearing*

The Supreme Court has held that procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interest within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Consistent with this principle, the Court has held that a hearing is generally

required before the State deprives a person of a liberty or property interest. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (citation omitted); *Memphis Light, Gas, and Water Div. v. Craft*, 436 U.S. 1, 16 (1978) (finding that "due process requires the provision of an opportunity for the presentation to a designated employee of a customer's complaint that he is being overcharged or charged services not rendered"); *Goss v. Lopez*, 419 U.S. 565, 579 (1975) ("At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.").

However, in instances where quick action by the State is necessary, or where providing a pre-deprivation process is impractical, a post-deprivation hearing may be constitutionally sufficient. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."); *see also Memphis Light*, 436 U.S. at 19 (noting that "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk," the government may act without a pre-deprivation hearing).

Payne does not facially attack the Bureau's power to suspend a license without a pre-deprivation hearing. Rather, Payne argues that Park failed to afford him due process when it did not immediately hold a hearing to address the suspension. Because his employment was terminated while his license was suspended, Payne argues that Park's suspension of his license caused him "immediate and irrevocable injury." Pl.'s Resp. 6. Though he does not indicate the precise contours of his

argument, Payne suggests that the delay in his proceedings was severe enough to be constitutionally deficient. *See Loudermill*, 470 U.S. 532 at 547 ("At some point, a delay in the post-termination hearing would become a constitutional violation.").

In the present case, Payne requested a hearing on June 2, 2010. The evidence indicates that had the suspension not been rescinded, Park would have held Payne's hearing by the end of July 2010. Thus, at most, 59 days would have elapsed between the request and the hearing. The Court must determine whether this delay of up to 59 days violates Payne's due process rights.

When determining if a delay in the date of a hearing violates due process, the Court considers "[1] the importance of the private interest and harm to this interest occasioned by delay; [2] the justification offered by the government for delay and its relation to the underlying governmental interest; and [3] the likelihood that the interim decision may have been mistaken." *FDIC v. Mallen*, 486 U.S. 230, 242 (1988). A person's "interest in continued employment is without doubt an important interest that ought not be interrupted without substantial justification." *Id.* at 243. In *Mallen*, the Supreme Court held that a 90-day period between a suspended bank officer's request for a hearing and a decision did not violate due process, even though the officer would be deprived of his livelihood. *Id.* The bank officer, who was indicted for making false statements under two federal statutes, was suspended by the FDIC pursuant to 12 U.S.C. § 1818(g). *Id.* at 236–238. The Court noted that a 90-day period will in "many cases, perhaps most" not violate due process when it is "justified by an important government interest coupled with factors minimizing the risk of an erroneous deprivation." *Id.* at 243. For example, the Court found that the delay in the bank officer's hearing was reasonable because "Congress has determined that the integrity of the banking industry

requires that indicted bank officers be suspended" because they "threaten to undermine public confidence in the bank." *Id.* at 244.

The Court finds that the delay in the present case is likewise "justified by an important governmental interest." *Id.* The Texas legislature has determined that licensed security officers hold a "position of trust." 37 TEX. ADMIN. CODE § 35.46(a) (2012) (Tex. Dep't of Public Safety, Guidelines for Disqualifying Convictions). "By virtue of their licenses, security professionals are provided with greater opportunities to engage in fraud, theft, or related property crimes." *Id.* Thus, the State has articulated an important interest in preventing those charged with theft from serving as licensed security officers.

Further, in the present case, there are factors minimizing the risk of an erroneous deprivation. The Supreme Court has held that "when an employee is arrested and then formally charged with a felony" there is adequate assurance that the suspension is not without justification. *Gilbert*, 520 U.S. at 934. There, the Court found the felony charge to be sufficient assurance because "an independent body demonstrate[d] that the suspension [was] not arbitrary." *Id.* (quoting *Mallen*, 486 U.S. at 244). Here, though Payne's license was suspended only after he was charged with a misdemeanor, the charge was likewise confirmed by facts independent of any investigation pursued by Defendant. *See Nnebe v. Daus,* 644 F.3d 147, 150 (2d Cir. 2011) (holding arrest for misdemeanor offense sufficient to automatically suspend taxicab driver's license without pre-deprivation hearing); *see also Krimstock v. Kelly,* 306 F.3d 40, 64 (2d Cir. 2002) (holding misdemeanor DWI charge sufficient to justify seizure of vehicle without hearing). Though Payne was terminated while his license was suspended, his termination was not the result of an error on the part of the State in failing to have a pre-deprivation hearing where the relevant facts were uncontradicted by either party.

In sum, although Payne would have had to wait up to 59 days for a hearing, his suspension was justified both by the significant public interest in preventing persons charged with theft from serving as licensed security guards and because Payne's arrest provided adequate assurance that the suspension was valid. Accordingly, Payne's due process right to a hearing was not violated by a wait of up to 59 days.

C.      *Sufficiency of the Summary Judgment Evidence*

Payne argues that Park's affidavits stating that Payne would be afforded a hearing regarding his suspension on the July docket are merely "anecdotally plausible" and "fail to satisfy the legal threshold required to render summary judgment in its favor." Pl.'s Resp. 4. A plaintiff bringing a section 1983 claim bears the burden of proving that he was denied a hearing. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of s[ection] 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States."); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 221 (5th Cir. 1984).

Park, who does not have the ultimate burden of proof at trial, has satisfied his burden on summary judgment. Park has proffered Tennill's affidavit stating Payne would be afforded a hearing in July, which by itself negates Payne's claim that Park denied Payne a hearing. Furthermore, Defendant has argued persuasively that there is an "absence of evidence supporting" Payne's case. *See Celotex*, 477 U.S. at 323. Payne has not placed any evidence – admissible at trial or otherwise – in the record, let alone evidence that would allow a jury to infer he was denied a hearing. *See id.* at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Payne's attempt to show that there is a

-11-

genuine issue of material fact is unavailing. Payne has filed a response that argues only that Park's evidence is insufficient because (1) it is conclusory hearsay, and (2) Tennill's affidavit is not substantiated by evidence Payne considers to be admissible. Because Tennill's affidavit includes admissible evidence that the Bureau regularly schedules post-deprivation hearings in an orderly fashion, and because Payne has failed to offer any evidence that would indicate otherwise, he has failed to show that a genuine issue of material fact exists as to whether he was denied a hearing by the State. Accordingly, Park's motion for summary judgment is **GRANTED.**

## IV.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

SO ORDERED.

SIGNED July 19, 2012

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-12-